UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON MATIA RODRIGUEZ CANEO,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, *et al.*,<br>Respondents. | Case No. 1:26-cv-05639 (EJD)<br>**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 9 |

Petitioner Aaron Matia Rodriguez Caneo is an immigration detainee currently being held at the California City Detention Facility awaiting the outcome of his removal proceedings. For the reasons that follow, the Court GRANTS the Amended Petition as to Petitioner's substantive due process claim, and orders his immediate release.

## I. BACKGROUND

Based on the parties' submissions, the Court finds the following facts. Petitioner is a native of Chile who was admitted to the United States on July 24, 1993 through a B2 visa when he was five years old. Dkt. No. 9 ¶ 18; Dkt. No. 9-1 ¶ 5; Dkt. No. 10-1 at 1. His visa expired on June 23, 1994. Dkt. No. 9 ¶ 18; Dkt. No. 10-1 at 1. Petitioner has lived continuously in the United States for the last thirty-three years. Dkt. No. 9 ¶ 19. His mother became a naturalized United States citizen in 2002, three of his brothers are United States citizens, and another sibling is a lawful permanent resident. *Id*. Prior to his detention, Petitioner worked as a barber and financially provided for his mother, who is currently seventy-eight years old. *Id*. ¶ 21.

Despite the majority of Petitioner's family obtaining legal status, the facts regarding Petitioner's immigration proceedings are fraught. Petitioner claims that his mother filed a Form I-

130 Petition for Alien Relative on his behalf, and that this petition was approved. *Id.* ¶ 20. However, neither party has indicated when this approval was processed. Petitioner maintains that he is seeking to adjust his immigration status to a lawful permanent resident based on this approved petition. *Id.* Sometime around December 5, 2025 Petitioner was pulled over by law enforcement for driving without a valid license, and then transferred to ICE custody. Dkt. No. 1 ¶ 24. That same day, he was served with a Notice to Appear ("NTA") charging him as subject to removal under 8 U.S.C. § 1227(a)(1)(B) for overstaying his visa. *See* Dkt. No. 10-1 at 1–4.

Petitioner has been continuously detained for over ten months, during which his removal and custody proceedings have taken several odd turns. On March 31, 2026, an Immigration Judge ("IJ") ordered that Petitioner be released on a $5,000 bond with certain conditions. *See* Dkt. No. 10-3 at 1. That same day, the Government moved for reconsideration of the bond order, citing inconsistencies between Petitioner's testimony and documentary evidence regarding arrests for traffic infractions and a stalking-related protective order allegedly entered against Petitioner. *See* Dkt. No. 10-5 at 1–5. The IJ granted the Motion for Reconsideration and set aside the bond order later that day. Dkt. No. 10-6 at 1–2. Petitioner requested a second custody redetermination hearing shortly after the motion was granted, however, he withdrew the request for reasons not explained in the Amended Petition or subsequent briefing. Dkt. No. 10-7 at 1–2.

Two months later, on May 20, 2026, an IJ dismissed Petitioner's removal case. Dkt. No. 9 ¶ 31; Dkt. No. 9-1 at 7. However, rather than releasing Petitioner upon dismissal, Respondents instead transferred Petitioner to a different detention facility. Dkt. No. 9 ¶ 33. And on May 26, 2026, they served Petitioner with a renewed NTA, again charging Petitioner as subject to removal under 8 U.S.C. § 1227(a)(1)(B) for overstaying his visa. *Id.* ¶ 35; Dkt. No. 10-2 at 1–4. Oddly, this NTA cites a different Alien-Registration number than what was listed on his first NTA. *Compare* Dkt. No. 10-1 *with* Dkt. No. 10-2. The Immigration Court has yet to issue a decision on this renewed NTA.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every

individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Both parties agree that Petitioner is subject to the discretionary detention framework set forth in 8 U.S.C. § 1226(a). However, Petitioner alleges that his continued detention violates his substantive due process rights under the Fifth Amendment, among other claims. *See* Dkt. No. 9 ¶¶ 63–65. Respondents oppose relief, arguing that the petition should be dismissed because Petitioner failed to exhaust his administrative remedies by (1) appealing the IJ's bond determination to the Board of Immigration Appeals ("BIA"), or (2) requesting a renewed custody redetermination hearing. *See* Dkt. No. 10 at 1–2.

The Court first addresses exhaustion before turning to the merits of Petitioner's due process claim. And because the Court finds that Petitioner is entitled to relief on his substantive due process claim, it declines to consider Petitioner's remaining claims for relief.

### A. Exhaustion

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the

agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Nevertheless, even if these factors weigh in favor of requiring exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

Petitioner's claims challenging the constitutionality of his continued detention may be reviewed by this Court. Indeed, where the Ninth Circuit found that exhaustion was required, the Petitioner challenged the IJ's bond decision itself, an error the BIA could correct. *Leonardo v. Crawford*, 646 F.3d 1157, 1160–61 (9th Cir. 2011). Here, Petitioner challenges no such decision; he claims that his detention has, in the course of time, become punitive in violation of his substantive due process rights. The agency has no special expertise in regards to that constitutional question. *See Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (waiver of exhaustion requirement proper where the petitioner raised a purely legal challenge). Accordingly, the Court will consider Petitioner's substantive due process claim.

**B. Substantive Due Process**

Courts in this circuit have taken various approaches to determine whether an immigration detainee subject to prolonged detention is entitled to relief under the Fifth Amendment's substantive due process clause, with many adopting a five-factor test articulated in *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1079–81 (N.D. Cal. May 2, 2024) ("*Doe II*"). *See Doe v. Chestnut*, No. 1:24-CV-00943-EPG-HC, 810 F. Supp. 3d 1169, 1183–84 (E.D. Cal. Nov. 20, 2025) (adopting *Doe II's* five-factor test); *c.f. Romero-Romero v. Wofford*, No. 1:24-cv-00944-SKO, 2025 WL 391861, at *3, 4–5 (E.D. Cal. Feb. 4, 2025) (applying the three-factor test in *Mathews v. Eldridge*, 424 U.S. 319 (1976)), *report and recommendation adopted in full*, 2025 WL 3154399 (E.D. Cal. Nov. 12, 2025). These five factors are: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the Government's contribution to any delay; (3) the evidence

supporting the determination that detention is warranted to prevent flight or danger to the community; (4) whether the Government's interests in ensuring appearance and protecting the community could be served through less harsh alternatives to detention; and (5) the conditions of detention and how they compare to those under which pretrial criminal detainees or convicted prisoners are held. *Doe II*, 732 F. Supp. 3d at 1080. On balance, these factors weigh in Petitioner's favor.

**1. Length of Detention**

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987)). "But while the existence of some threshold of per se due process violation may be 'undisputed,' ... it has also never been clearly delineated in the context of immigration detention." *Doe v. Becerra*, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("*Doe I*"). "Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against … the regulatory purposes for detention—preventing flight risk and protecting public safety." *Doe II*, 732 F. Supp. 3d at 1083.

Here, Petitioner's detention has lasted over ten months, which is undoubtedly prolonged. *See Chen v. Aitken*, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in *Demore*" and "neither release nor removal are imminent"). Indeed, it exceeds the time period the Supreme Court has considered permissible in other contexts. *Zadvydas*, 533 U.S. at 701 (nothing that six months of detention following the entry of a final order of removal was presumptively reasonable); *Demore v. Kim*, 538 U.S. 510, 529 n.12, 530 (2003) (noting that mandatory detention under 8 U.S.C. § 1226(c) was facially constitutional, in part because detention under that statute typically did not last longer than five months). While prolonged, the current ten-month duration of Petitioner's detention, *standing alone*, does not violate his substantive due process rights. *See Torres*, 995 F.3d at 699 (identifying 21-months of pre-trial

detention as "likely approaching the outer bounds of due process"). However, as discussed further below, Petitioner has offered evidence that this duration is excessive in relation to its regulatory purpose.

**2. Delay**

Relevant to this analysis is the parties' responsibility for "delays that have contributed to the duration of detention." *Doe II*, 732 F. Supp. 3d at 1083. This factor weighs in Petitioner's favor. Petitioner's removal proceedings were *dismissed* on May 20, 2026, which could have put an end to Petitioner's detention five months ago. However, the Government chose instead to reinitiate Petitioner's removal proceedings six days later on the same grounds that were previously dismissed. Even though these proceedings were re-initiated five months ago, Petitioner has still not received an order from an IJ. Whether the delay in these re-initiated proceedings was due to the Government or Petitioner seeking continuances is unclear. However, the Court still finds the Government largely responsible for the delay here given its decision to restart Petitioner's removal proceedings, and keep Petitioner detained during the pendency of them.

**3. Flight Risk and Danger**

Determining whether Petitioner's prolonged detention has become punitive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." *Doe II*, 732 F. Supp. 3d at 1086.

The record on this factor is mixed, however, the Court finds that it still tips in Petitioner's favor. The critical fact here is that an IJ already determined once that Petitioner had shown he was neither a flight risk nor danger to the community when it ordered Petitioner's release on a $5,000 bond on March 31, 2026. Though that same day the IJ set aside the bond amount pursuant to the Government's motion for reconsideration, the IJ's order did not indicate whether he had made any alternative findings of Petitioner's flight risk or danger, or even what grounds he granted the motion on. Under these facts, a determination by this Court of present dangerousness or flight risk

United States District Court
Eastern District of California

would be unwarranted.

**4. Alternatives to Detention**

Relevant to assessing dangerousness and risk of flight is whether the Government's interests in protecting the community and ensuring appearances for immigration proceedings could be protected through alternatives to detention that are less restrictive. *Doe II*, 732 F. Supp 3d at 1080. This factor also weighs in Petitioner's favor for reasons similar to the above. In setting Petitioner's bond amount at $5,000, the IJ determined a set of conditions to help mitigate any flight risk and potential danger, including that Petitioner not be arrested and refrain from using illegal drugs, among other items. Respondents have offered no evidence or argument suggesting that these conditions—which were already deemed appropriate by an IJ—are insufficient to mitigate any risks associated with Petitioner's release.

**5. Conditions of Detention**

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. *Doe II*, 732 F. Supp. 3d at 1080; *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'"). This factor is neutral. Though Petitioner maintains that he has several medical conditions, including high blood pressure, pre-diabetes, depression, and a kidney injury caused by a car accident which "have not been adequately addressed in detention[,]" he has not offered any evidence to support this conclusory statement. *See* Dkt. No. 9 ¶¶ 22–23. Without more facts concerning how Petitioner's medical conditions have been handled in detention, as well as the conditions at the detention facility generally, the Court cannot find that this factor weighs in Petitioner's favor.

**6. Balancing**

On balance, Petitioner has established that his lengthy detention is excessive in relation to its regulatory purpose. Petitioner has been detained for ten months despite an IJ finding at one point that release was appropriate, and his removal proceedings being dismissed and then re-

started by the Government. Accordingly, Petitioner is entitled to relief on his substantive due process claim.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Amended Petition for Writ of Habeas Corpus is GRANTED as to count five. Respondents shall release Petitioner from custody within seven days of this order. Respondents may impose additional conditions of release on Petitioner for the purposes of ensuring public safety and mitigating risk of flight.

**IT IS SO ORDERED.**

Dated: October 14, 2026

EDWARD J. DAVILA
United States District Judge